NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-89

STATE OF LOUISIANA

VERSUS

VINCENT DEVONTE DOTSON

AKA VINCENT DOTSON

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 13-3915
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

**AFFIRMED.**

**Bradley R. Burget**
**District Attorney, Seventh Judicial District**
**Joseph A. Boothe**
**Assistant District Attorney, Seventh Judicial District**
**4001 Carter Street, Suite 9**
**Vidalia, LA 71373**
**(318) 336-5526**
**COUNSEL FOR STATE:**
     **State of Louisiana**

**Pride J. Doran**
**Quincy L. Cawthorne**
**Dwazendra J. Smith**
**Doran & Cawthorne Law Firm, P.L.L.C**
**P. O. Box 2119**
**Opelousas, LA 70571**
**(337) 235-3989**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Vincent Devonte Dotson**

**Vincent Dotson**
     **Vincent Devonte Dotson**

**SAUNDERS, Judge.**

On November 14, 2013, Defendant, Vincent Devonte Dotson, was indicted by a grand jury for the second degree murder of the victim, Derec Dobbins, a violation of La.R.S. 14:30.1. A jury found him guilty as charged on October 29, 2014. Defendant filed a motion for new trial on November 12, 2014, alleging the verdict was contrary to the law and evidence, the trial court's pre-trial and trial rulings showed prejudicial error, and the ends of justice would be served by granting a new trial. The trial court denied Defendant's motion for new trial at a hearing on November 26, 2014.

## FACTS:

The State alleged Defendant shot and killed the victim on August 28, 2013.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. As his second issue for review, Defendant requests an error patent review of the record. After reviewing the record, we find there is one error patent.

The jury's verdict sheet was not signed by the foreman of the jury as required by La.Code Crim.P. art. 810 which states, in pertinent part:

> When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury.

Although the portion of the trial transcript reflecting the return of the verdict indicates the verdict sheet was signed, the verdict sheet itself is not. Additionally, the trial court clerk's office has verified by affidavit contained in a supplemental record that they could not locate a signed verdict sheet in the record. In *State v. Vargas-Alcerreca*, 12-1070, pp. 14-16 (La.App. 4 Cir. 10/2/13), 126 So.3d 569,

577-78, *writ denied*, 13-2588 (La. 4/17/14), 138 So.3d 625 (footnote omitted), the court discussed the lack of a signature on the jury verdict sheet:

> The failure to sign the verdict form is error. *See State v. Green*, 2010-0791, p. 6 (La.App. 4 Cir. 9/28/11), 84 So.3d 573, 579, *writ denied*, 2011-2316 (La.3/9/12), 84 So.3d 551. Therefore, we must determine whether the error was harmless in this case. The three jury verdict forms in the record each have the charged offense, a numbered list of "possible verdicts", a blank line for the verdict and one for the foreperson's signature on the front, and a handwritten notation on the back. As to the La. R.S. 14:42 charge, the front of the form lists nine possible verdicts with No. 4, "GUILTY OF ATTEMPTED FORCIBLE RAPE" circled, and "(29) 42.1" handwritten next to the circled verdict; on the back is the handwritten notation: "We the jury find the defendant guilty of attempted forcible rape." As to the La. R.S. 14:44.1 charge, the front of the form lists five possible verdicts with No. 3, "GUILTY OF SIMPLE KIDNAPPING" circled, and "(27) 14:45" handwritten next to the circled verdict; the back contains the handwritten notation: "We the jury find the defendant guilty of simple kidnapping." Neither of these two forms contains the foreperson's signature either on the front or back. The transcript of the trial proceedings states: "THE JURY PANEL RETURNED TO OPEN COURT AT APPROXIMATELY 10:30 p.m. WITH THE FOLLOWING VERDICTS: COUNT 1: GUILTY OF ATTEMPTED FORCIBLE RAPE; COUNT 2: GUILTY OF SIMPLE KIDNAPPING; AND COUNT 3: NOT GUILTY. NO POLL OF THE JURY WAS TAKEN."
>
> In *State v. Green, supra*, this court found harmless error where the foreperson had failed to sign the jury verdict forms for either of two defendants. In that case, the verdict forms to both defendants simply read: "Guilty." The respective verdict forms each listed seven unnumbered responsive verdicts, with "Guilty" being the first, followed by five other verdicts of guilty of lesser offenses, and then by "Not Guilty". We stated that the placement on the forms of "Guilty" as the first responsive verdict in both lists clearly signified that "Guilty" meant guilty of the offense charged, which in that case was armed robbery. In light of the fact that the evidence supported the verdicts, this court found that the verdict forms were not ambiguous but clearly conveyed the jury's intent. *Id*.
>
> Similarly, we find the failure of the foreperson to sign the verdict forms to be harmless error in the case before us. More so than the singular word "Guilty" in *Green*, the notations written on the back of each form in this case unquestionably convey the jury's intent.

Additionally, in *State v. Mitchell*, 246 So.2d 814, 837 (La.1971), *cert. denied*, 404 U.S. 1000, 92 S.Ct. 561 (1971), in addressing a raised issue regarding unsigned verdict sheets, the supreme court stated:

> The non-compliance herein with the provisions of LSA-C.Cr.P., Art. 810, is also of no consequence. The jurors were polled in the presence of defendant and his counsel, who were aware of the verdicts in no uncertain terms. The polling of the jury cured the clerical non-compliance with the provisions of LSA-C.Cr.P., Art. 810, as to the three verdicts (with which we are herein concerned) not signed by the foreman of the jury. It is well to remember that the jurors were laymen; they were not furnished with a copy of the judge's charge to the jury in this case and therefore had to rely upon their memories as to their instructions. The cases having been consolidated and tried together, it was a reasonable oversight by the foreman not to have signed the three verdicts. Under the facts and circumstances surrounding this matter, the failure of the foreman to sign three of the verdicts rendered herein does not constitute reversible error. Prejudice has not been shown.

In the case before us, the verdict sheet clearly indicates the jury's verdict was "guilty of 2nd deg murder." At Defense's request, the jury was polled. Shortly thereafter, a bench conference was conducted, and the court indicated that the parties stipulated that the verdict was valid. Accordingly, we hold that the error is harmless.

## ASSIGNMENT OF ERROR NUMBER ONE:

Defendant argues the trial court erred in denying his motion for new trial because the verdict was contrary to the law and evidence, and the trial court's denial of his motion shows prejudicial error in violation of La.Code Crim.P. art. 851. He contends the motion for new trial should have been granted because the State failed to show at trial he had the specific intent to kill the victim.

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La.

3

7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165). It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *Id*. The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The fact finder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring the sufficiency evaluation standard of *Jackson,* "the appellate court should not second-guess the credibility determination of the trier of fact[,]" but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, p. 5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 727). Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve "'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. [120], [134] S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another

hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378.

"Second degree murder is the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm . . . ." La.R.S. 14:30.1(A)(1). "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). It "need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant." *State v. Maxie,* 93-2158, p. 11 (La. 4/10/95), 653 So.2d 526, 532 (citing *State v. Graham,* 420 So.2d 1126 (La.1982)). "It is well-settled that the act of pointing a gun at a person and firing the gun is an indication of the intent to kill that person." *State v. Thomas*, 10-269, p. 7 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, 1215, *writ denied,* 10-2527 (La. 4/1/11), 60 So.3d 1248, *cert. denied*, _ U.S. _,132 S.Ct. 196 (2011) (citing *State v. Pierre,* 02-277 (La.App. 3 Cir. 6/11/03), 854 So.2d 945, *writ denied,* 03-2042 (La. 1/16/04), 864 So.2d 626; *State v. Reed,* 00-1537 (La.App. 3 Cir. 3/6/02), 809 So.2d 1261, *writ denied,* 02-1313 (La. 4/25/03), 842 So.2d 391; and *State v. Clark,* 93-1470 (La.App. 3 Cir. 10/5/94), 643 So.2d 463, *writ denied,* 94-2715 (La. 2/9/95), 649 So.2d 418). Evidence of flight is also relevant because it indicates consciousness of guilt. *State v. Davies*, 350 So.2d 586 (La.1977).

At trial, the following evidence was presented to the jury:

In the early morning hours of August 28, 2013, Tommy Duck, Justin Rodgers, John Yearby, Tim Thomas, Greg Brown, and the victim were standing around the victim's truck drinking beer. Yearby, Thomas, and Brown left to go

5

purchase more beer. Duck, Rodgers, and the victim remained at the truck and continued talking.

The victim, who was seated on the tailgate of the truck, asked Defendant to "come over" and talk with him. Defendant approached the truck and spoke to the victim. The victim asked Defendant, "What's the problem; why don't you like me; what did I do to you?" Defendant and victim had a previous "old" incident involving a dog. Defendant walked back toward Morris Lee Lane. The victim followed Defendant when he walked away and repeated the questions. The victim continued to ask why Defendant did not like him. Defendant did not acknowledge the victim, and he turned and walked away.

According to Duck, the victim asked something along the lines of, "Do you want me to hug your little a--?" Defendant stopped, turned around, rubbed his head, put his hand in his pocket, pulled out a gun, and shot the victim in the chest. When the victim turned around and started back toward Duck, Defendant "took off." The victim stumbled for a few steps and collapsed. Duck ran to get the victim's sister, who attempted to perform CPR. Rodgers called 911.

According to Duck's testimony, the victim never threatened Defendant or ever touched him. He identified Defendant as the shooter at trial. Duck saw the shooting and had no doubt about what he saw. He testified that he saw fire come from the gun when it was shot.

Duck told officials a "buddy" was using the restroom at the time of the shooting but claimed he did not know his name. This was later revealed to be a lie; Rodgers was in the bushes. Duck lied because Natchez police had a warrant for Rodgers, and he did not want Rodgers to be arrested.

Duck testified that the gun involved in the shooting was a .38 revolver which Defendant regularly carried in a red or orange Nike bag or in his pocket. He said

that Defendant was always taking it out and playing with it. Duck did not see the gun on the night of the shooting until immediately before it was fired.

He thought Defendant was potentially dangerous and paranoid at times. Duck, Defendant, the victim, and others would visit with each other often; some days Defendant acted normal. However, on the "weird days," Defendant would "stare at people" and "[p]lay with his little gun."

Rodgers also testified that he had known Defendant and the victim all his life. Rodgers confirmed that the victim questioned Defendant and was trying to tell Defendant he did not need to act like there was a problem when none existed. According to Rodgers, Defendant "just turned around and shot [the victim] and ran." They did not argue, raise their voices, or touch each other. Defendant never said anything to anyone.

Rodgers had also often seen Defendant with a firearm, the .38 revolver. Rodgers described Defendant as sometimes being "cool" and "most of the time he just . . . pops up looking crazy."

Rodgers had a warrant against him and was afraid to stay at the scene to give police a statement.[1] When Rodgers left the scene, he saw Tiffany Dotson, Caprice Glass, and John Yearby. He told the group Defendant had shot the victim.

Sergeant Heath Edwards of the Vidalia Police Department received a call at 12:17 a.m. about the shooting on Davis Street. As he approached the location, a man in the street, whom he recognized as Duck, flagged him into Morris Lee Lane. Sergeant Edwards "saw somebody laying in the middle of that alley in the middle of the road." A woman was beside the body, trying to render aid. The man was lying on his back and had a bullet hole on the left side of his chest. He had no

---

[1]Rodgers was in jail in Natchez for being a convicted felon with a firearm when he later gave his statement. He had previously been convicted of carjacking in Concordia Parish in 2005. He pled guilty to the Natchez charge and received a five-year probated sentence.

pulse. Duck told Sergeant Edwards the victim and Defendant "were arguing over something, and Defendant "pulled out a gun, fired one shot[,] and fled[.]"

Captain Walter Williams of the Vidalia Police Department and the ambulance arrived shortly thereafter. Deputies Jimmy Watts, Rob Polk, and Brennan Russell of the Concordia Parish Sheriff's Office, along with Vidalia Police Chief Arthur Lewis and Assistant Chief Bruce Wiley, arrived last. The victim was transported to Natchez Regional Hospital, where the coroner of Adams County, Mississippi, pronounced him dead at 1:12 a.m.

Captain Williams recognized the victim, nicknamed "Bedee," and testified "[h]e was a nice young man[,]" known by his friends as a fisherman, hunter, and outdoorsman who always wore camouflage gear. He also recognized Duck, who told Captain Williams he "had seen everything and that Hustler was the shooter." Captain Williams knew "Hustler" as Defendant, and he identified him at trial. Officers found no weapon or shell casings at the scene, leading Captain Williams to conclude the weapon was a revolver.

Captain Jack Fletcher of the Concordia Parish Sheriff's Office investigated the shooting because the Vidalia Police Department's investigators were out of town at a seminar. He found no blood and no shell casings at the scene, which usually indicates a "revolver type pistol" was used. The victim's body did not show an exit wound, which attributed to the loss of little or no blood.

Several of Defendant's family members eventually found him walking on the road and picked him up. Defendant said he wanted to "turn [him]self in in Ferriday to Officer Rickey Hollins." Glass and Tiffany Dotson were also driving nearby and asked to speak with Defendant. The two cars pulled into a parking lot. Once in the parking lot, Defendant got in the car with Glass and Tiffany Dotson. Defendant's father's SUV was also parked in the lot.

8

Deputy Russell, Sergeant Watts, and Deputy Polk were on duty the night of the shooting. The three officers drove through the area in search of Defendant. Deputy Russell observed the three cars in the parking lot that quickly left upon his arrival. Deputy Russell activated his blue lights and siren as he followed the vehicle containing Defendant, but it would not stop. The officers were eventually able to maneuver their vehicles into a rolling road block in an attempt to slow down and stop the vehicle.

The vehicle ran through the ditch on the side of the road in an attempt to get around the officers. It finally came to a rest after being blocked by one of the officers. The officers approached the vehicle with weapons drawn and removed Glass and Tiffany Dotson from it.

The back door of the vehicle was locked. Upon opening the door, Defendant resisted his removal from the vehicle, and he was eventually placed in handcuffs and arrested. Deputy Russell identified Defendant at trial as the man he removed from the vehicle and arrested.

The trial court qualified Lisa Funte, the Deputy Chief Medical Examiner for Mississippi, as an expert in the field of forensic pathology. Dr. Funte performed an autopsy on the victim, and found the manner of death a homicide from a gunshot wound to the chest. Dr. Funte removed the bullet during the autopsy.

Michael Stelly of the North Louisiana Crime Lab examined the bullet and testified as an expert in firearm identification. Mr. Stelly determined the bullet was a .38/.357 magnum caliber bullet. He identified the potential weapon as most likely either a Smith & Wesson or a Taurus revolver.

After a review of the evidence, we find the evidence at trial was sufficient to show Defendant had the specific intent to kill the victim or cause him great bodily harm. Defendant was known to carry a revolver that matched the type of weapon

from which the bullet was fired. The undisputed and uncontested evidence showed Defendant aimed a loaded revolver at the victim and shot him without provocation. Defendant then left the scene and convinced both Deanna Robertson and Caprice Glass to drive him between Vidalia and Ferriday. Even though he represented to them he wanted to surrender to police, he stipulated that he would only agree to surrender to Rickey Hollins. In fact, he did not surrender at all. Rather, when the vehicle in which he was a passenger was stopped, Defendant hid in the back seat and locked the vehicle's doors in an effort to avoid capture.

Because the evidence was sufficient to find Defendant guilty of second degree murder, we find the trial court did not err in denying his motion for new trial based on insufficient evidence. Accordingly, we find Defendant's conviction and sentence should be affirmed.

**DECREE:**

For the foregoing reasons, the judgment of the trial court is affirmed.

**CONVICTION AND SENTENCE AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.